UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| HOULTON BAND OF MALISEET INDIANS, | )<br>)<br>) |
| Plaintiff | )<br>) |
| v. | ) Civil No. 05-180-B-W<br>) |
| PATRICIA E. RYAN, EXECUTIVE DIRECTOR MAINE HUMAN RIGHTS COMMISSION, et al., | )<br>)<br>)<br>)<br>)<br>) |
| Defendants | ) |

### *RECOMMENDED DECISION ON MOTION TO DISMISS*

The Houlton Band of Maliseet Indians is pressing a two-count complaint against Executive Director of the Maine Human Rights Commission Patricia Ryan, members of the Maine Human Rights Commission, Attorney General Steven Rowe, and Connie Zetts, a former Houlton Band employee. Count One contends that the Maine Human Rights Commission's actions with respect to employee charges of discrimination against Houlton Band interfere with Houlton Band's inherent sovereignty and its federal statutory right of self governance. Count Two asserts that, although the Maine Indian Claims Settlement Act (MICSA) abrogated Houlton Band's sovereign immunity from law suits heard in courts, it did not abrogate its sovereign immunity with respect to the Maine Human Rights Commission's out-of-court administrative proceedings.

The Commission defendants have filed a motion to dismiss the complaint (Docket No. 9) which has been referred to me for a recommended disposition.[1] In this motion the defendants argue that principles of claim and issue preclusion foreclose Count One of the Houlton Band's complaint in light of Judge Brody's decision in <u>Houlton Band of Maliseet Indians v. Maine Human Rights Commission</u>, 960 F. Supp. 449 (1997). As to Count Two, the defendants believe that a claim of sovereign immunity as a defense to an employment discrimination claim is defeated by 25 U.S.C. § 1725(a) as it subjects the Houlton Band to the "civil and criminal jurisdiction" of Maine to the same extent as any other person.

For the reasons set forth below, I recommend that the Court grant this motion to dismiss on the grounds that both counts of Houlton Band's current complaint are barred by the doctrine of claim preclusion.

## *Discussion*

### *The Prior Litigation*

#### *The 1996 Complaint*

Count One of Houlton Band's 1996 complaint sought declaratory judgment against the Maine Human Rights Commission (MHRC) and the State of Maine (as well as the Department of the Interior and the Bureau of Indian Affairs) apropos complaints of unlawful employment discrimination against the Houlton Band because the complaints involved the internal tribal matters of the Houlton Band. (1996 Compl. ¶¶ 26, 27, 28.) It

---

[1] Proceeding pro se, Connie Zetts has filed her own pleading seeking dismissal of the complaint as against her should the Commission defendants obtain dismissal. (Docket No. 15.) Houlton Band has filed an objection to that motion arguing: "Liberally construed, the Motion can only be read to argue that if the other defendants are dismissed, Zetts should be dismissed. Zetts fails to offer any reason, even one liberally stated, for why she as a private, non-governmental litigant should be treated in the same fashion as the official state Defendants." (Opp'n Zetts' Mot. Dismiss at 2) (footnote omitted). Zetts' time to reply to that objection has not yet elapsed.

alleged that between November 1, 1995, and January 17, 1996, four of Houlton Band's former employees had filed complaints with the MHRC. (Id. ¶ 14.) It alleged that on December 20, 1995, Houlton Band asked, in a "Request for Administrative Dismissal," that the MHRC dismiss two of the complaints for lack of jurisdiction. (Id. ¶ 15) (emphasis added). The request was rebuffed, based, at least in part, on the advice of the Attorney General. (Id. ¶¶ 16-17.) Houlton Band contended that it had inherent sovereign rights to control its internal tribal matters (id. ¶ 19) and that its employment decisions when acting as a tribal governmental employer are internal tribal matters and are not subject to state regulation (id. ¶ 20). The complaint relied on 25 U.S.C. § 1726(a) and its provision that the Houlton Band could organize for its common welfare and adopt an appropriate instrument in writing to govern its affairs when acting in its governmental capacity. (Id. ¶ 21.)

Count Two of the 1996 complaint charged the MHRC and the Attorney General with violating Houlton Band's right to Equal Protection. (Id. ¶¶ 29-30.) And Count Three was asserted as a 42 U.S.C. § 1983 count alleging, in a rather catch-all fashion, deprivations of Houlton Band's rights, privileges, and immunities guaranteed by the United States Constitution. (Id. ¶¶ 31-33.)

### *The 1997 Decision*

In Houlton Band of Maliseet Indians v. Maine Human Rights Commission, 960 F. Supp. 449 (D. Me. 1997) the Court analyzed the parameters of Houlton Band's sovereign immunity within the context of the MICSA and the Maine Implementing Act (MIA). The decision stated:

> The Supreme Court has recognized that although the sovereign powers of Indian tribes are broad, "[t]he sovereignty that the Indian tribes

3

retain is of a unique and limited character." <u>United States v. Wheeler</u>, 435 U.S. 313, 323 (1978). The Court explained:

> [Indian tribes' sovereignty] exists only at the sufferance of Congress and is subject to complete defeasance. But until Congress acts, the tribes retain their existing sovereign powers. In sum, Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status.

<u>Id.</u> In other words, Indian tribes retain their sovereignty solely at the will of Congress. "Congress has plenary authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess." <u>Santa Clara Pueblo v. Martinez</u>, 436 U.S. 49, 56 (1978). It is upon this backdrop that the Court examines the extent to which Congress has limited the Band's otherwise sovereign rights, and, ultimately, if the Band retains the right to be free from state interference with claims of unlawful employment discrimination.

In 1979, the Passamaquoddy Tribe and the Penobscot Nation entered into a settlement agreement with the State of Maine regarding land claims disputes ("the Maine Implementing Act" or "the Agreement"). <u>See</u> 30 M.R.S.A. §§ 6201-6214. In addition to settling the land claims disputes, the Agreement also sets forth the legal status of the Passamaquoddy Tribe, the Penobscot Nation, and the Band with regard to the State. For instance, the Agreement provides that "[t]he Houlton Band of Maliseet Indians and its lands will be wholly subject to the laws of the State." <u>Id.</u> § 6202. The Agreement also states:

> Except as otherwise provided in this Act, all Indians, Indian nations, and tribes and bands of Indians in the State ... shall be subject to the laws of the State and to the civil and criminal jurisdiction of the courts of the State to the same extent as any other person or lands or other natural resources therein.

<u>Id.</u> § 6204. As this section makes explicit, the Band is subject to the laws of the State of Maine unless there is an exemption elsewhere in the Agreement. There is no exemption for the Band from coverage under the Maine Human Rights Act.

The Agreement, moreover, specifically provides that the internal tribal matters of the Passamaquoddy Tribe and the Penobscot Nation "shall not be subject to regulation by the State." <u>Id.</u> § 6206(1). The Band, however, is glaringly absent from this exemption. Moreover, the Agreement declares:

> The Houlton Band of Maliseet Indians shall not exercise nor enjoy the powers, privileges and immunities of a municipality <u>nor exercise civil or criminal jurisdiction within their lands, prior to the enactment of additional legislation specifically authorizing the exercise of those governmental powers</u>.

4

Id. § 6206-A (emphasis added). There has not been additional legislation that permits the Band to exercise civil or criminal jurisdiction within its lands.

Only Congress has the plenary authority to limit the sovereign rights of Indian groups. Accordingly, in 1980, Congress passed the Maine Indian C[l]ai[m]s Settlement Act (also referred to as "the Act"). See 25 U.S.C. §§ 1721-1735. The Act ratified the Agreement between the Penobscot Nation, the Passamaquoddy Tribe and the State of Maine, and confirmed "that all other Indians, Indian nations and tribes and bands of Indians now or hereafter existing or recognized in the State of Maine are and shall be subject to all laws of the State of Maine, as provided herein." Id. § 1721(b)(3), (4). Most significantly, the Act states:

> Except as provided in section 1727(e) and section 1724(d)(4) of this title, all Indians, Indian nations, or tribes or bands of Indians in the State of Maine, other than the Passamaquoddy Tribe, the Penobscot Nation, and their members .... shall be subject to the civil and criminal jurisdiction of the State, the laws of the State, and the civil and criminal jurisdiction of the courts of the State, to the same extent as any other person or land therein.

Id. § 1725(a) (emphasis added). Section 1727(e) concerns the applicability of the Indian Child Welfare Act, and § 1724(d)(4) pertains to the possibility of future agreements between the Band and the State of Maine permitting the acquisition of land by the United States in trust for the Band. Id. §§ 1727(e), 1724(d)(4). Section 1724(d)(4) provides, however, that "such agreement shall not include any other provisions regarding the enforcement or application of the laws of the State of Maine." Id. § 1724(d)(4). Neither § 1727(e) nor § 1724(d)(4), therefore, exempts the Band from "internal tribal matters" or from the civil law of the State that is within the jurisdiction of the MHRC.

The Act further states that the Passamaquoddy Tribe, the Penobscot Nation, and the Band may sue and be sued in the courts of the State of Maine to the same extent as any other person in the State; however, "the Passamaquoddy Tribe, the Penobscot Nation, and their officers and employees shall be immune from suit to the extent provided in the Maine Implementing Act." Id. § 1725(d)(1). It is noteworthy that § 1725 does not create a similar exemption for the Band. The First Circuit has held: "When, as now, Congress has unambiguously expressed its intent through its choice of statutory language, courts must read the relevant laws according to their unvarnished meaning, without any judicial embroidery." Passamaquoddy Tribe v. State of Maine, 75 F.3d 784, 793 (1st Cir.1996). It is indeed clear from the statutory language of the Maine Implementing Act and the Maine Indian Claims Settlement Act that the Band is subject to the civil laws of the State and, therefore, to the jurisdiction of the MHRC for claims of unlawful employment discrimination.

5

Id. at 451-53.

In this prior litigation, the Court explained, Houlton Band was not "claiming that it is exempt from all state laws": It argued that it was "exempt from those state laws that interfere with its right to self-government and self-determination and that the claims of unlawful employment discrimination against the Band that [were] presently before the MHRC [were] matters that relate[d] to the Band's self-government and self-determination."  Id. at 453.  The Court rejected this argument as "seriously flawed."  Id.  It reasoned:

> [T]he complainants contend that they were fired because of their race and because they reported illegal activity. Such employment action is prohibited by Maine law. Since the Band is subject to the civil laws of the state, it may not engage in unlawful employment discrimination. Accordingly, the MHRC has jurisdiction to review the claims of unlawful employment discrimination against the Band that are before it. Further, even if the MHRC's ultimate decision has an incidental effect on the Band's government, the Band is nonetheless subject to its jurisdiction.

 Id. at 454 (citing Houlton Band of Maliseet Indians v. Boyce, 688 A.2d 908, 911 (Me. 1997)).

And then the Court explained:

> The Band also relies on Mitchell v. Passamaquoddy Tribe No. 84-0073 (D. Me. Jan. 9, 1990 (Recommended Disposition of the Magistrate), aff'd. (D.Me. Feb. 1, 1990) (Carter, C.J.), for support of its position that the MHRC does not have jurisdiction over the claims against the Band. The Band contends that Mitchell holds that the hiring and firing of its employees is an integral part of tribal government and, as such, is an "internal tribal matter" that is free from state interference. The Band's reliance on Mitchell is misplaced. The Court notes that Mitchell involved a claim of a former employee of the Passamaquoddy Tribe under 42 U.S.C, § 1983. The "internal tribal matters" of the Passamaquoddy Tribe, however, are not subject to state regulation. See 30 M.R.S.A. § 6206(1). There is no such exemption for the Band. As stated by the Maine Implementing Act and ratified by the Maine Indian Claims Settlement Act, all Indian groups within the State of Maine shall be subject to the civil and criminal jurisdiction of the State except as otherwise indicated.

> See 30 M.R.S.A. § 6204; 25 U.S.C. §§ 1721(b)(3)- (4), 1725(a). Therefore, even if the hiring and firing of employees is an "internal tribal matter," a matter that the Court does not address here, the Band is still subject to the civil and criminal jurisdiction of the State if such hiring and firing implicates state law. Since the complainants before the MHRC allege they were fired in violation of state law, the Band is subject to the jurisdiction of the MHRC.
> 
> The Band also contends that 25 U.S.C. § 1726 supports the Band's sovereign right to control its "internal tribal matters." Section 1726(a) states:
>> The Passamaquoddy Tribe, the Penobscot Nation, and the Houlton Band of Maliseet Indians may each organize for its common welfare and adopt an appropriate instrument in writing to govern the affairs of the tribe, nation or band when each is acting in its governmental capacity.
>
> Id. It is noteworthy, however, that § 1726 also provides the following caveat: "Such instrument and any amendments thereto must be consistent with the terms of this subchapter and the Maine Implementing Act." Id. Therefore, although the Band may organize for its common welfare and adopt a governing instrument for its members, it must do so in accordance with the terms of the Maine Implementing Act and the Maine Indian Claims Settlement Act. As explained above, the terms of the Maine Indian Claims Settlement Act and the Maine Implementing Act provide that the Band is subject to the laws of the State of Maine. There is nothing in § 1726 that holds to the contrary. Additionally, § 6206(1) of the Maine Implementing Act exempts only the Passamaquoddy Tribe and the Penobscot Nation from the laws of the State regarding "internal tribal matters." The Band is afforded no such exemption. Section 6206(1) was ratified by Congress in 25 U.S.C. § 1721. Thus Congress's intent is clear. The Band is not exempt from State law affecting "internal tribal matters." The Court does not address the issue of whether the State may exercise jurisdiction over the Band's "political" decisions, such as what form of government it chooses or how it conducts its elections of tribal council members. Yet to the extent that the Band's actions affect and implicate state law, the Band is subject to <u>the civil and criminal jurisdiction of the State</u>.

Id. at 454-55 (emphasis added).

After analyzing and rejecting Houlton Band's Title VII related challenge to the MHRC's jurisdiction over MHRA claims, the Court concluded:

> The express will of Congress, as codified in the Maine Indian Claims Settlement Act, controls the present issue. As explained above, "When ... Congress has unambiguously expressed its intent through its choice of

statutory language, courts must read the relevant laws according to their unvarnished meaning...." Passamaquoddy Tribe v. State of Maine, 75 F.3d 784, 793 (1st Cir.1996). While it is true that "ambiguities in legislation affecting retained tribal sovereignty are to be construed in favor of the Indians," Washington v. Yakima Indian Nation, 439 U.S. 463, 484 (1979), Congress has been absolutely clear regarding the legal status of the Band. It is unequivocally subject to the civil and criminal laws of the State of Maine, including the Maine Human Rights Act and the Whistleblowers' Protection Act.

Id. at 455-56.

*The Present Litigation*

*The 2005 Complaint*

The allegations of Houlton Band's current complaint as relevant to the resolution of the current motion are as follows.[2] Connie Zetts was employed by the Houlton Band at its health clinic as an LPN and phlebotomist. (Am. Compl. ¶ 10.) On October 4, 2005, Zetts filed a charge of discrimination with the MHRC alleging discrimination under both the Maine Human Rights Act (MHRA) and Title VII and she requested that charges be filed with the Equal Employment Opportunity Commission and the MHRC. (Id. ¶ 21.) In an October 28, 2005, letter Patricia Ryan notified Houlton Band that the MHRC had opened a preliminary investigation and demanded that the Houlton Band submit "an extensive reply including documents production." (Id. ¶ 22.)

*Count One*

In Count One the Houlton Band argues that MHRC actions with respect to employee charges of discrimination against it interferes with Houlton Band's inherent

---

[2] Houlton Band filed its complaint on November 28, 2005. On December 4, 2005, it filed a motion to amend the complaint with an attachment of the proposed amended complaint. (Docket No. 4.) On December 16, 2005, I entered an order granting that motion because no responsive pleading had been filed. (Docket No. 8.) Houlton Band did not actually file the amended complaint (Docket No. 17) until after these defendants filed their motion to dismiss but it is clear that the defendants' motion is addressed to the counts framed in the amended complaint attached to the motion to amend.

8

sovereignty and its federal statutory right of self governance. It opines that Indian tribes may exercise various rights of inherent sovereignty protected by federal common law (id. ¶ 24) and a tribe's inherent sovereignty includes the right of Indians to make their own laws and to live by them, absent abrogation by the Congress or the consent of the tribe (id. ¶25). The Maliseets received federal recognition under 25 U.S.C. § 1725(i),[3] (id. ¶ 26), a subsection of MICSA. Subsection 1726(a) of MICSA provides that Houlton Band may organize a government and govern itself. (Id. ¶ 27.)[4] The Band's tribal

---

[3] This subsection provides:
> As federally recognized Indian tribes, the Passamaquoddy Tribe, the Penobscot Nation, and the Houlton Band of Maliseet Indians shall be eligible to receive all of the financial benefits which the United States provides to Indians, Indian nations, or tribes or bands of Indians to the same extent and subject to the same eligibility criteria generally applicable to other Indians, Indian nations or tribes or bands of Indians. The Passamaquoddy Tribe, the Penobscot Nation, and the Houlton Band of Maliseet Indians shall be treated in the same manner as other federally recognized tribes for the purposes of Federal taxation and any lands which are held by the respective tribe, nation, or band subject to a restriction against alienation or which are held in trust for the benefit of the respective tribe, nation, or band shall be considered Federal Indian reservations for purposes of Federal taxation. Notwithstanding any other provision of law authorizing the provision of special programs and services by the United States to Indians because of their status as Indians, any member of the Houlton Band of Maliseet Indians in or near the town of Houlton, Maine, shall be eligible for such programs and services without regard to the existence of a reservation or of the residence of such member on or near a reservation.

25 U.S.C. § 1725(i). The Houlton Band als o cites to 25 CFR § 83.12(a):
> Upon final determination that the petitioner exists as an Indian tribe, it shall be considered eligible for the services and benefits from the Federal government that are available to other federally recognized tribes. The newly acknowledged tribe shall be considered a historic tribe and shall be entitled to the privileges and immunities available to other federally recognized historic tribes by virtue of their government-to-government relationship with the United States. It shall also have the responsibilities and obligations of such tribes. Newly acknowledged Indian tribes shall likewise be subject to the same authority of Congress and the United States as are other federally acknowledged tribes.

25 CFR § 83.12(a). In Paragraph 26 of its amended complaint Houlton Band also cites to Carcieri v. Norton, 423 F.3d 45, 62 (1st Cir. 2005) for the proposition that once the Band received federal recognition it gained the same benefits as other tribes.

[4] This subsection of MICSA provides:
> The Passamaquoddy Tribe, the Penobscot Nation, and the Houlton Band of Maliseet Indians may each organize for its common welfare and adopt an appropriate instrument in writing to govern the affairs of the tribe, nation, or band when each is acting in its governmental capacity. Such instrument and any amendments thereto must be consistent with the terms of this subchapter and the Maine Implementing Act. The Passamaquoddy Tribe, the Penobscot Nation, and the Houlton Band of Maliseet Indians shall each file with the Secretary a copy of its organic governing document and any amendments thereto.

government has established a process to address employment matters, including grievances and the hiring and firing of employees; the tribal government is the final decision maker on these matters. (Id. ¶ 33.)[5]

Houlton Band seeks an injunction to halt the enforcement of the State employment laws against it – including an injunction on the attendant investigations and discovery demands. (Id. ¶ 37.) It wants a declaration that Houlton Band possesses all the inherent sovereign rights of Indian tribes, including self-governance, unless and until Congress expressly abrogates those rights. (Id. ¶ 38.) And, finally as to Count One, Houlton Band wants a declaration that it possess all of its statutory rights including but not limited to rights of self-governance available to other federally recognized tribes unless and until Congress expressly abrogates those rights. (Id. ¶ 39.)

*Count Two*

Count Two of Houlton Band's current complaint asserts the MHRC's administrative proceedings interfere with Houlton Band's retained rights of sovereign

---

25 U.S.C.A. § 1726(a). The Band argues that because Congress never abrogated the Houlton Band's common law right to self-government, this provision is an affirmation of that right rather than a grant. (Am. Compl. ¶ 27.)

[5] The Houlton Band offers further legal argumentation in the remainder of its Count One 'allegations.' It contends that the language of 25 U.S.C. § 1726(a) closely tracks the language of Section 16 of the Indian Reorganization Act of 1934 and cites to the Morton v. Mancari, 417 U.S. 535, 542 (1974) construction of Section 16. (Id. ¶ 28.) It argues that Houlton Band retains all attributes of its inherent sovereignty unless Congress specifically abrogates those attributes and a grant of jurisdiction to the State of Maine does not, by itself, abrogate Houlton Band's right to self-government. (Id. ¶ 29.) It asserts that any conflict between the provisions of MICSA and the MIA is controlled by MICSA. (Id.) In addition, Houlton Band urges, per the Indian canons of statutory construction, that any abrogation of tribal sovereignty must be clear and unequivocal, with all doubts resolved in Houlton Band's favor; sovereign rights cannot be extinguished by silence or by implication. (Id. ¶ 30.) The Houlton Band describes as "well settled" the federal law that state employment discrimination laws do not apply to persons employed by Indian tribal governments because such application interferes with the inherent sovereign rights of Indian tribes to self-governance and self-determination. (Id. ¶ 31; see also id. ¶ 32.) It contends that the State of Maine and the MHRC cannot meet their burden of proving that Congress has expressly abrogated the right of the Band to deal with tribal government employee matters without State interference. (Id. ¶ 34.) The continued enforcement of the State anti-discrimination laws by the MHRC, the Houlton Band argues, interferes with its rights, privileges, and immunities conferred upon Houlton Band by federal law, including MICSA and the supremacy clause of the United States Constitution (id. ¶ 25) and violates the equal protection rights of Houlton Band (id. ¶ 36).

immunity. Specifically, it contends that as a matter of federal law Houlton Band's sovereign immunity bars the enforcement of State anti-discrimination laws against the tribal government by the MHRC. (Am. Compl. ¶ 41.) Each attribute of sovereign immunity is separate, and the waiver of one does not imply the waiver of another. (Id. ¶ 44.) Congress, by enacting 25 U.S.C. § 1725(d)(1), only abrogated Houlton Band's sovereign immunity from lawsuits heard "in the courts of the State of Maine and the United States." (Id. ¶ 45.) Congress never abrogated its sovereign immunity for non-judicial proceedings such as administrative proceedings and hearings conducted by the MHRC. (Id. ¶ 46.)[6]

Apropos Count Two Houlton Band requests a declaration that its sovereign immunity bars the administrative enforcement of State anti-discrimination laws against Houlton Band by the MHRC in any forum other than "in the courts of the State of Maine and the United States." (Id. ¶ 48.) It also wants the Court to enjoin the MHRC from administrative enforcement activity against the tribal government of Houlton Band. (Id. ¶ 49.)

***Claim Preclusion and Houlton Band's Argument Against It***

Under the doctrine of res judicata/claim preclusion,

> "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised <u>or could have been raised in that action.</u>" <u>Breneman v. United States ex rel. F.A.A.</u>, 381 F.3d 33, 38

---

[6] In support of Paragraph 46 Houlton Band cites to <u>United States v. Puerto Rico</u>, 287 F.3d 212, 218 (1st Cir. 2002) for the proposition that the word "suit" had a particular meaning in a legal context and refers specifically to an action in a judicial forum.

The remaining allegations of Count Two are, like the above citation to <u>United States v. Puerto Rico</u>, purely legal argumentation. Houlton Band asserts that: tribal sovereign immunity remains intact unless Congress has "unequivocally" expressed its purpose to abrogate it (id. ¶ 42); Indian tribes retain those aspects of sovereignty not withdrawn by treaty or statute; (id. ¶ 43); and the continued enforcement of State anti-discrimination laws by the MHRC against the Houlton Band deprives Houlton Band of its rights, privileges, and immunities secured by federal law, including MICSA and the supremacy clause of the United States Constitution.

11

> (1st Cir.2004) (citation omitted). Specifically, res judicata applies when the following exist: "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." Id. This doctrine, also known as claim preclusion, serves the purpose of "reliev[ing] parties of the cost and vexation of multiple lawsuits, conserv[ing] judicial resources, and ... encourag[ing] reliance on adjudication." Id. (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

Gonzalez-Pina v. Rodriguez, 407 F.3d 425, 429 -30 (1st Cir. 2005) (emphasis added).[7]

With respect to the defendants' claim preclusion defense, Houlton Band contends that the defendants' argument fails under the "sufficient identicality between the causes of action asserted in the earlier and later suits" prong of the inquiry.  (Opp'n Mot. Dismiss at 4.)  It states: "The claim presented here may be summarized quite simply: *the Band's federally protected rights to self-governance (inherent sovereignty) and its sovereign immunity prohibit the MHRC from investigating Maine Human Rights Act charges brought by Defendant Zetts in 2005*." (Id.)   Houlton Band maintains that the factual underpinnings of the current complaint are not related in time, space, or origin to the facts of the 1997 suit.  (Id. at 5.)  The facts are different, it asserts, as the two cases involve "employees bringing claims a decade apart and instigating separate and different investigations by the MHRC."  (Id.)  "Litigation of the Zetts investigation," Houlton Band contends, "could not possibly form a convenient trial unit with Houlton Band [v. of Maliseet Indians v. Maine Human Rights Commission, 960 F.Supp. 449 (D. Me. 1997)],

---

[7]   "Res judicata" the Court explained "is an issue of law over which this court exercises plenary review." Id. at 429 (citing Pérez-Guzmán v. Gracia, 346 F.3d 229, 233 (1st Cir.2003)).  Given that this is a purely legal, as opposed to factual, inquiry there is no reason why Houlton Band is unfairly prejudiced by the resolution of the question at the motion to dismiss (as opposed to the summary judgment) stage.

and it is absurd to suggest that the parties [in the 1996 action] expected to adjudicate any of the instant claims."[8]

What astounds me about this position is that if the Court were to embrace this argument then the relief that Houlton Band now seeks (<u>and sought in the 1996 litigation</u>), declaratory and injunctive relief that would apply to all future employee/Houlton Band MHRA disputes, would be binding upon the MHRC but not the Band. As to those future disputes such employees/prospective MHRA litigants would have no expectation that this litigation is adjudicating any of their potential claims. Under Houlton Band's theory, if the nature of each employee's employment-related claim gives rise to a separate cause of action apropos the Houlton Band's amenability to investigation and suit under the MHRA then the injunctive and declaratory relief it would be entitled to would necessarily be limited to the claims of the employees named in the suit. There is no question that the prayer for relief in the amended complaint seeks (and sought in 1996) relief that Houlton Band could use to ward off future MHRA investigations[9] and employee suits. (Am. Compl. at 9-10.)

In a similar vein, Houlton Band complains that barring all claims against the MHRC based on a claim preclusion theory "threatens to 'cloak' the MHRC 'in perpetual

---

[8]  Houlton Band relies on the unpublished First Circuit opinion <u>Cooper v. Principi</u>, 71 Fed. Appx. 73 (1st Cir. 2003) in arguing that the defendants are conflating the need that claims arise from the same transaction with the abstractly stated legal issues in dispute. (Am. Compl. 4-5.) Even if it had precedential value, <u>Cooper</u> was a case involving two suits brought by an employee complaining of his termination; it did not involve a declaratory action. If the 1996 litigation was postured in a similar manner and those employees were returning to this court as plaintiffs after a lack of success in the 1996 litigation, Houlton Band could certainly assert a claim preclusion defense based on <u>Cooper</u>'s reasoning.

[9]  With respect to Houlton Band's argument on this score it argues that the MHRC is engaged only in "*similar* conduct" to that involved in the 1997 action. (Opp'n Mot. Dismiss at 5.) Given that Houlton Band sought a declaration that the MHRC lacks jurisdiction over complaints of unlawful employment discrimination against Houlton Band (1996 Compl. ¶ 28(D)) and asked the Court to permanently enjoin the MHRC from asserting jurisdiction over any future complaints of unlawful employment discrimination against it (<u>id.</u> ¶ 28(E)) it may well be that it is judicially estopped from taking its current position. See <u>New Hampshire v. Maine</u>, 532 U.S. 742, 748-51 (2001).

13

immunity and thus possibly protect conduct lasting long past the prior judgment – conduct that the law may grow to abhor." (Opp'n Mot. Dismiss at 4 n.2)(quoting Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp., 421 F.2d 1313, 1316 (5th Cir. 1970)).[10] The Band contends that the defendants would have the 1997 decision "preclude every future claim arising from the 1980 Settlement Acts or even prohibit by them [sic]." (Opp'n Mot. Dismiss at 4 n.2.) First, these defendants are not (and could not) ask this Court to read the 1997 decision, apropos the two counts of the current complaint, as extending to non-MHRA investigation and suits. And as to MHRA investigations and suits, given the relief that Houlton Band sought in its 1996 suit and seeks again here, Houlton Band needs to swallow the proposition that what is sauce for the goose is sauce for the gander.

I recognize that Houlton Band relies on Lawlor v. National Screen Service Corporation, 349 U.S. 322 (1955), a case which involved two anti-trust actions – one in 1942 (which settled) and the second in 1949 -- against an "accessory distributor" and motion picture producers. The Supreme Court concluded that the two suits were not based on the same cause of action, pointing to the fact that the later-in-time action complained of conduct that occurred after the judgment in the earlier case and noting that there were new anti-trust violations alleged. Id. at 326-28. "While the 1943 judgment precludes recovery on claims arising prior to its entry," the Court opined, "it cannot be given the effect of extinguishing claims which did not even then exist and which could

---

[10] On this score I note that Houlton Band is the party pursuing a suit that would reach beyond the particular employment dispute – protecting Houlton Band's conduct long past the current judgment. I further note, with respect to a concern that there can be no challenge to precedent that is thrown into doubt by subsequent decisions, that there are avenues open to a litigant seeking to revisit the holding. For one, if a Houlton Band employee wants to bring an action under the MHRA he or she can file an action and any decision of this Court in this declaratory action would not be binding. Second, as Houlton Band asserts and I discuss below, it is possible to raise a change-in-the-law argument in the context of a declaratory action.

14

not possibly have been sued upon in the previous case." Id. at 328. Houlton Band contends that Zetts' claim (and those of other employees') did not exist at the time of the 1996 complaint/ 1997 judgment and that, therefore, Lawlor controls. However, Houlton Band does not articulate how the nature of each employee's claim would make any difference in the court's determination apropos the declaratory and injunctive relief against the MHRC that is the core relief that it sought in 1996 and which is what the Houlton Band seeks again here. And Houlton Band has not convinced me that Lawlor offers any real guidance in the context of Houlton Band's two declaratory actions.[11]

In discussing the defendants' assertion of claim preclusion, Houlton Band does not argue that it could not have raised all the issues it raises here in the 1996 action. See Breneman, 381 F.3d at 38 ("[A] final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action."). Apropos the defendants' issue preclusion arguments Houlton Band does state that its complaint "raises new issues not the same as those involved in the prior action, including (a) whether tribal sovereign immunity bars MHRC administrative actions and (b) whether federal law preempts the State anti-discrimination statutes in play

---

[11]  I realize that Lawlor added that its conclusion was "unaffected by the circumstance that the 1942 complaint sought, in addition to treble damages, injunctive relief which, if granted, would have prevented the illegal acts now complained of," id. at 328, observing that a "combination of facts constituting two or more causes of action on the law side of a court does not congeal into a single cause of action merely because equitable relief is also sought." Id. at 328-29. However, in my opinion the claim preclusion issues arising from the two declaratory relief actions by the Houlton Band seeking permanent declaratory and injunctive relief against the MHRC apropos the Commission's investigation with respect to employee MHRA claims (regardless of what facts and legal theories those claims might be predicated upon) are simply not answered by Lawlor. It seems to me that Lawlor would be relevant if the 1996 action was brought by employees seeking redress (including injunctive relief) for employment discrimination, say in a class action, and some of the same employees returned with similar claims based on alleged post-1996 discrimination by Houlton Band.

15

here under the interest balancing test of White Mountain Apache v. Bracker, 448 U.S. 136 (1980)." (Opp'n Mot. Dismiss at 6-7) (emphasis added).[12]

The problem that I see with Houlton Band's notion that somehow its sovereign immunity bars MHRC's administrative actions (as opposed to in-court-efforts) is that the 1996 lawsuit was filed by Houlton Band when the complaints were in the administrative stage and the Houlton Band had filed a "Request for Administrative Dismissal" with the MHRC. (1996 Compl. ¶¶ 15-16.) This is the relief that Judge Brody denied based on his conclusion that "the MHRC has jurisdiction to review the claims of unlawful employment discrimination against the Band that are before it." Houlton Band of Maliseet Indians, 960 F. Supp. at 454. The Court held: "It is indeed clear from the statutory language of the Maine Implementing Act and the Maine Indian Claims Settlement Act that the Band is subject to the civil laws of the State and, therefore, to the jurisdiction of the MHRC for claims of unlawful employment discrimination." Id. at 453 (emphasis added). The Court concluded that 25 U.S.C. § 1725(a) subjected Houlton Band, not only to the jurisdiction of the courts of the State of Maine (a proposition that it

---

[12] Briefly, with respect to issue preclusion or collateral estoppel, the First Circuit has explained:
> The principle of collateral estoppel, or issue preclusion, bars relitigation of any factual or legal issue that was actually decided in previous litigation "between the parties, whether on the same or a different claim." Dennis [v. Rhode Island Hosp. Trust, 744 F.2d [26,] 899 (1st Cir. 1994)] (quoting Restatement (Second) of Judgments, § 27 (1982)) (emphasis in original). When there is an identity of the parties in subsequent actions, a party must establish four essential elements for a successful application of issue preclusion to the later action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment. See NLRB v. Donna-Lee Sportswear Co., Inc., 836 F.2d 31, 34 (1st Cir.1987); In re Sestito, 136 B.R. 602, 604 (Bankr.D.Mass.1992); In re Dubian, 77 B.R. 332, 337 (Bankr.D.Mass.1987). An issue may be "actually" decided even if it is not explicitly decided, for it may have constituted, logically or practically, a necessary component of the decision reached in the prior litigation. Dennis, 744 F.2d at 899 (emphasis in original).

Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 -31 (1st Cir. 1994).
Should the Court disagree with the grounds for my recommended claim-preclusion based disposition, then consideration should be paid to the arguments on both sides on this question.

does not dispute here), but also abrogated its sovereign immunity apropos the MHRC's administrative jurisdiction.[13] See Aroostook Band of Micmacs v. Ryan, 404 F.3d 48, 69 (1st Cir. 2005) ("Again, a key flaw in Maine's analysis is its assumption that tribal sovereign immunity is only a defense to a lawsuit, and since the Commission has not filed (or threatened to file) suit against the Band, considerations of tribal sovereign immunity are premature. But tribal sovereign immunity might apply to the Commission's investigations themselves.").

With respect to Houlton Band's argument that the Court should apply the balancing test of White Mountain Apache Tribe v. Braker, that decision was issued in 1980 and was clearly at Houlton Band's disposal when it brought its 1996 action against the Commission and the State. See Breneman 381 F.3d at 38.

Finally, Houlton Band argues that intervening decisions have altered the legal atmosphere since the 1997 decision. (Opp'n Mot. Dismiss at 9-12.) As Houlton Band states: "The appropriate test is that 'changed circumstances will preclude the application of collateral estoppel only if they might have altered the decision the court made in the

---

[13] I have tried to carefully read Houlton Band's argument with respect to Count Two to discern the anatomy of this claim to immunity it presses. As best as I can tell, Houlton Band is claiming the same form of sovereign immunity it claimed in the 1996 litigation but distinguishes the claim in this case only on the grounds that the 1996 assertion purportedly was only an assertion of immunity for court proceedings whereas the current assertion is for administrative proceedings. As, I indicate above, given the fact that the claims were in an administrative posture when Houlton Band filed its 1996 action and the manner in which the Court addressed the interests at stake, I have concluded that the decision addressed and answered the question as to whether it could assert a right to sovereign immunity as to the MHRC's administrative proceedings, as well as any potential involvement of the MHRC in a formal judicial proceeding.

Houlton Band has not articulated a claim that it can assert a defense of sovereign immunity on a case-by-case basis, despite the operation of 28 U.S.C. § 1725(a), on a theory that it, as a sovereign, enjoys an immunity from a suit for monetary damages akin to that of the United States or, even, a state under the Eleventh Amendment. If it did have the ability to assert such a defense then the question of preclusion would not be a roadblock as this type of sovereign immunity defense can be asserted or waived on a case-by-case basis without prejudice to later litigation. Although the question of the sustainability of such a defense is an interesting one, as the dispute presently stands it would be of no avail as there is no suit for money damages against Houlton Band at issue here (Zetts has not filed a civil action) and this ilk of sovereign immunity is not a defense to injunctive or declaratory relief.

first proceeding.'" (Id. at 10) (quoting Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 981 (1st Cir. 1995)).[14] It is Houlton Band's contention that: "Courts now hold consistently that the right of Indian tribes to discharge their tribal governmental employees is specifically an *internal* matter and that federal law preempts interference with it." (Opp'n Mot. Dismiss at 10.) I have reviewed the post-1997 precedents cited by Houlton Band, see Snyder v. Navajo Nation, 382 F.3d 892 (9th Cir. 2004); Taylor v. Ala. Intertribal Council Title IV J.T.P.A., 261 F.3d 1032 (11th Cir. 2001); EEOC v. Karuk Tribe Hous. Auth., 260 F.3d 1071 (9th Cir. 2001); NLRB v. Pueblo of San Juan, 280 F.3d 1278 (10th Cir. 2000); Penobscot Nation v. Fellencer, 164 F.3d 706 (1st Cir. 1999), and strongly disagree with Houlton Band that these decisions would support a reconsideration of the court's 1997 decision given the unique statutory framework of the Maine Settlement Acts. See, e.g., Aroostook Band of Micmacs, 404 F.3d at 53 ("The tribal-state relationship between Maine and the Indian tribes located within its borders is complex."); Akins v. Penobscot Nation, 130 F.3d 482, 489 (1st Cir. 1997) ("We stress that we do not read the reference by Congress to Santa Clara Pueblo [v. Martinez, 436 U.S. 49 (1978)] in the legislative history of the Settlement Act as invoking all of prior Indian law. That would be inconsistent with the unique nature of the Maine settlement and the specific provisions of the Act limiting the application of federal Indian law.").[15]

---

[14] The Band relies upon this case to support its argument in favor of rejecting both the arguments of claim preclusion and issue preclusion advanced by the State. Although the case is an issue preclusion case – and principles of res judicata/claim preclusion may raise different concerns than principles of collateral estoppel/issue preclusion with respect to intervening changes in the law -- I see no reason why Houlton Band cannot raise a change in the law argument in response to the defendants' claim preclusion argument. My point here is that the legal landscape regarding the statutory language of MICSA and the MIA has not changed appreciably since Judge Brody's decision, which, in my view, was correctly decided then and remains a correct statement of statutory construction today. I have restated significant portions of that decision at the beginning of this recommended decision and I see no reason to attempt to redo that analysis.

[15] Houlton Band also cites to a decision I rendered, Aroostook Band of Micmacs v. Ryan, 403 F. Supp. 2d. 114 (D. Me. 2005) (Kravchuk, Magis. J., by consent), which is now on appeal to the First Circuit.

With this argument – and with its complaint's request that the Court declare that it possesses all the inherent and statutory rights of self-governance (Am. Compl. ¶¶ 38,39) - Houlton Band is in one sense asking the Court rewrite the Maine Indian Lands Claim Settlement Act and the Maine Settlement Act.  If the United States Congress wishes to revisit the terms of its settlement with Houlton Band and rework its legislation it is within its exclusive purview to do so.

*Conclusion*

For the reasons set forth above, I recommend that the Court **GRANT** this motion to dismiss (Docket No. 9) on the grounds that both counts of Houlton Band's current complaint as against Patricia Ryan, members of the Maine Human Rights Commission, and Steven Rowe[16] are barred by the doctrine of claim preclusion.

NOTICE

> A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and

---

This opinion would not be precedent in support of Houlton Band's contention that preclusion is inappropriate in this case.

     On this score, I have reviewed the argument for and against granting the defendants' motion on the merits, as an alternative to granting on the grounds of preclusion.  In my opinion all the meaningful portions of the 1997 opinion are not assailable on the grounds pressed by Houlton Band.  (See Opp'n Mot. Dismiss at 13 -20.)  Should the Court conclude that the defendants are not entitled to dismissal on the preclusion argument, the Court would need to address Houlton Band's argument that dismissal on the merits is inappropriate and that the case would somehow await resolution through a summary judgment motion.  It is my opinion the resolution of the substantive merits of the defendants' argument requires answering questions of law– largely a matter of statutory interpretation – and is in no way dependent on a summary judgment factual record.  The State defendants have included chunks of legislative record/history here which I have largely ignored because this is a motion to dismiss.  However, I see no reason for allowing this case to proceed to the summary judgment stage because a record consisting of competing legislative pronouncements will solve nothing.  Are we to have a trial because there are disputed facts about what Congress really intended ?  Should the Court reject the defendants' preclusion defense, in my opinion the motion to dismiss should be decided on the merits because it turns on a question of law regarding the meaning of the statutory enactment.

[16]    The plaintiff concedes the sufficient identicality of the parties for purposes of claim preclusion. Accordingly, the fact that this complaint lists the executive director, members of the commission, and the attorney general by name -- rather than naming the Maine Human Rights Commission and the State of Maine as defendants as did the 1996 complaint -- is of no import.

19

request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

February 3, 2006.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge